UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRIAN A. COWAN | CIVIL ACTION NO. 09-cv-1644 |
| VERSUS | JUDGE STAGG |
| MORGAN KEEGAN & CO., INC., ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Brian Cowan ("Plaintiff") filed this civil action against Morgan Keegan & Company, Inc. and broker Tandy G. Lewis based on the allegations of securities fraud in connection with advice Lewis gave Plaintiff about the purchase of auction rate securities ("ARS"). Defendants filed a Motion to Stay and to Compel Arbitration (Doc. 11) based on an arbitration provision in a document related to Plaintiff's investment account. Plaintiff responds that the documents he signed and received did not include the arbitration clause invoked by Defendants. It is recommended, for the reasons that follow, that the motion be granted.

**Relevant Facts**

Plaintiff, a local attorney, was riding his bicycle while training for an Ironman triathlon when a drunk driver struck him. Plaintiff's injuries included optic nerve and eye muscle damage that left him unable to practice law from 2002 until late 2005. During that

time, and while recuperating from surgery, Plaintiff temporarily moved to Florida. Affidavit of Plaintiff, Doc. 20, Exhibit E.

From Florida, Plaintiff contacted defendant Lewis about a desire to invest approximately $436,000. Lewis was then working for Amsouth Investments Services, Inc. ("ASI"), which was later acquired by Morgan Keegan. Plaintiff explained he must invest the funds conservatively in a liquid investment with minimum risk, because they were his life savings and he was concerned about whether he would be able to return to work as an attorney. Lewis proposed that Plaintiff invest in what Lewis and Plaintiff discussed as "municipal bonds," but which were actually ARS. Plaintiff alleges that Lewis knowingly omitted material facts in his description of the investments. Complaint, ¶¶ 56-58; Plaintiff's Affidavit at ¶¶ 4-6. Plaintiff alleges that Morgan Keegan, as successor to ASI, knew that the market for ARS was failing but did not disclose that or other important facts to him in connection with his investment.

Plaintiff testifies that Lewis told him that he needed to sign a "new account form" to open the account for the ARS investment. Lewis or his assistant faxed a document titled "Disclosure Statement" to a St. Petersburg, Florida AmSouth bank branch. Plaintiff visited the branch and signed the document. The final paragraph of the one-page disclosure statement provides, just above the signature lines: THIS ACCOUNT IS COVERED BY A PREDISPUTE ARBITRATION AGREEMENT WHICH IS LOCATED IN PARAGRAPHS

19 AND 20 OF THE CLIENT AGREEMENT LOCATED ON THE REVERSE SIDE OF THIS PAGE."

Plaintiff signed the Disclosure Statement, but he testifies that the bank employee did not present him the Client Agreement, , a copy of which is attached to his affidavit as Exhibit B, that sets forth the arbitration terms. Plaintiff testifies: "I never saw or received Exhibit B when I executed the one-page Exhibit A." Plaintiff's Affidavit, ¶¶ 7-9.

The arbitration provision invoked by Defendants is contained in paragraph 19 of the Client Agreement. It states in pertinent part:

> It is agreed that any controversy between you, your Broker and AIS or any controversy arising out of the business of Broker or AIS or this agreement, shall be submitted to arbitration ....

**Analysis**

**A. Introduction**

A two-step analysis is employed to determine whether a party may be compelled to arbitrate. First, the court examines whether the party has agreed to arbitrate the dispute. This requires the court to ask: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. Jones v. Halliburton Co., 583 F.3d 228, 233-34 (5th Cir. 2009), citing J.P. Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007). If yes is the answer to both questions, the court then asks whether any federal statute or policy renders the claims nonarbitrable. Id.

**B. Scope**

Plaintiff does not contend that any federal statute or policy renders his claims non-arbitrable. There is also no serious debate that the dispute in question falls within the scope of the arbitration provision in the Client Agreement. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Jones, 583 F.3d at 235, citing Safer v. Nelson Fin. Group, Inc., 422 F.3d 289, 294 (5th Cir. 2005). A valid agreement to arbitrate applies unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue. Jones, citing Personal Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002).

Courts have categorized arbitration clauses as narrow or broad. A clause that requires arbitration of disputes that arise out of the contract is ordinarily considered a narrow clause. A clause like the one in this cause - which applies to any controversy between Plaintiff and Defendants - is considered a broad clause that is capable of expansive reach. Jones, 583 F.3d at 235; Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). A dispute may be subject to arbitration under a broad clause if it has a significant relationship to the contract or touches matters covered by the agreement. Id.

Plaintiff represents in his memorandum that, since he filed this suit, Morgan Keegan has repurchased most of the ARS that it underwrote or sold nationally, including two of Plaintiff's three ARS investments. Plaintiff casts the remaining issue as why the national repurchase program does not include the third ARS. Plaintiff's attempt to narrow the issue

does not, however, remove the dispute from the scope of the arbitration clause. The complaint itself plainly arises from a controversy between Plaintiff, his broker, and Morgan Keegan/AIS, and even the narrowed version of the dispute falls easily within the scope of the arbitration clause.

### C. Agreement to Arbitrate

The central debate between the parties is whether there is a valid agreement to arbitrate. The Disclosure Statement that Plaintiff signed bears, just above Plaintiff's signature, a statement that the account for which he is registering is governed by an arbitration agreement that is located in paragraphs 19 and 20 of the Client Agreement. Plaintiff argues that there was no agreement to arbitrate because he was not presented the referenced Client Agreement. Defendants contend that the Disclosure Statement's reference to the Client Agreement is adequate to constitute an agreement to arbitrate. No party contests the authority of the court, rather than an arbitrator, to decide the issue.

In determining whether there is a valid agreement to arbitrate, the court applies ordinary state-law principles that govern the formation of contracts. Graves v. BP America, Inc., 568 F.3d 221, 222 (5th Cir. 2009). The Client Agreement provides in paragraph 16 that it is governed by Alabama law. Plaintiff argues that the court should apply Louisiana contract law to determine whether the agreement, that contained the Alabama choice of law provision, was agreed to by the parties. Defendants have not expressly taken an opposing view.

Louisiana courts have held that an arbitration clause need not be contained in a single document to be part of a contract. Instead, the document that contains the arbitration requirement can be incorporated by reference. The arbitration clause need only have a "reasonably clear and ascertainable meaning." Lamarque v. Barbara Enterprises, Inc., 958 So.2d 708, 712-13 (La. App. 4th Cir. 2007). Alabama law also provides that an arbitration clause in a writing that is referred to in a written contract may be regarded as incorporated by reference as a part of the contract and, therefore, require a signer of the contract to arbitrate. Advance Tank and Const. Co., Inc. v. Gulf Coast Asphalt Co., L.L.C., 968 So.2d 520, 524 (Ala. 2006).

Plaintiff argues in his memorandum that his poor vision and the blurry fax copy of the Disclosure Statement that he signed prevented him from being aware of the arbitration language. His affidavit, however, does not include such testimony. Plaintiff testifies in his affidavit that he believed the form was "merely perfunctory," similar to a checking account signature card, and he signed it. The copy of the Disclosure Statement in the record is of marginal quality, but it is legible. Counsel for Defendants represents in a memorandum that various copying and faxings of the document, combined with electronic filing, have caused the copy in the record to be of significantly worse quality than the document that was signed. In any event, the document of record is legible, and "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."

Aguillard v. Auction Management Corp., 908 So.2d 1, 17 (La. 2005). If a party can read, he should examine an instrument before signing it. If he cannot read, he should have the instrument read to him and listen attentively. Id., citing Tweedel v. Brasseaux, 433 So.2d 133, 137 (La. 1983). If a party is not aware of the contents of the instrument he signed, he must establish with reasonable certainty that he was "deceived." Id.; Lamarque, 958 So.2d at 713.

Alabama law is similar, providing that when "a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby." Advance Tank, 968 So.2d at 528, quoting First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553, 558 (Ala.1999). The rule was applied in Ex parte Stripling, 694 So.2d 1281 (Ala. 1997) to bind to arbitration men who signed investment account applications without reading them. The front side of the applications, immediately above the signature line, referred to an arbitration clause that was set forth in a clause on the reverse side of the form. The men protested that the clause was not adequately conspicuous, but the court rejected their plea.

There is no contention that Plaintiff was deceived. He was given a legible document, which he readily signed, and that document made specific reference to an arbitration provision on the reverse side. That was the functional equivalent of the arbitration clause being incorporated by reference to another document, considering that Plaintiff received by

fax only the front side of the one-page, front-and-back document. Plaintiff was not given a copy of that second document, but the document he signed made specific reference to the Client Agreement and its arbitration requirement, making the arbitration clause reasonably clear and ascertainable in meaning. Plaintiff could have easily requested a copy of the Client Agreement and learned the exact terms of the arbitration clause.

Louisiana courts have required parties to arbitrate when the arbitration clause was incorporated by reference in a similar fashion. See Lamarque, 958 So.2d at 709 (dismissing argument that arbitration agreement was not contained in the actual contract signed by the plaintiff; it was only incorporated by reference); Dufrene v. HBOS Manufacturing, LP, 872 So.2d 1206 (La. App. 4th Cir. 2004) (plaintiffs were bound by arbitration agreement that was incorporated by reference in the purchase agreement for a mobile home); and Russellville Steelco, Inc. v. A&R Excavating, Inc., 624 So.2d 11 (La. App. 5th Cir. 1993) (purchase order for erection work called for in an attached subcontract sufficiently incorporated arbitration provision of the subcontract). Alabama has also required a party to arbitrate in such circumstances, even when the party did not receive a copy of an incorporated document that included the arbitration agreement. Advance Tank, 968 So.2d at 528.

Defendants point to a Texas decision that applied that state's similar rules to a set of facts similar to those in this case. The several plaintiffs in In re: Raymond James & Associates, Inc., 196 S.W. 3rd 311 (Tex. App.-Houston 1st Dist. 2006) filed suit for fraud and violations of state and federal securities laws. The plaintiffs, when they opened their

accounts, signed a New Account Form. The Form stated just above the signature line that it was subject to a Client Agreement that was incorporated by reference. The Client Agreement contained a binding arbitration clause. The plaintiffs attested in affidavits that they neither signed nor were provided a copy of the Client Agreement. The Texas court required arbitration because the plaintiffs had been placed on notice by the document they did sign that there was another agreement that contained an applicable arbitration clause.

Plaintiff in this case signed a document that made specific reference to an arbitration agreement in paragraphs 19 and 20 of a Client Agreement that was said to be located on the reverse of the page Plaintiff signed. There is no evidence that Plaintiff was then shown the Client Agreement, but Plaintiff was deemed to know the contents of the document to which he affixed his signature. That document gave him information by which he could have easily requested and obtained a copy of the Client Agreement and arbitration provision, giving the arbitration clause a reasonably clear and ascertainable meaning. The undersigned finds that there was a valid agreement to arbitrate the claims, the dispute in question falls within the scope of the arbitration agreement, and there is no federal statute or policy that renders the claims nonarbitrable.

**Conclusion**

A stay is mandatory upon a showing that the opposing party has commenced suit on an issue referable to arbitration under a written agreement. 9 U.S.C. § 3. A stay is appropriate in this case. The court should also administratively close this case, as there is no

foreseeable task left for the district court in connection with the potential arbitration. If a prevailing party seeks to confirm an award made in the arbitration, they may seek that relief by filing a new civil action. There is no reason to keep this civil action open and pending on the court's calendar, where it could remain pending indefinitely.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Stay and to Compel Arbitration (Doc. 11) be granted, that Plaintiff, Brian Cowan, be directed to submit to arbitration all of his claims asserted in this case that he wishes to pursue, that this case be stayed, and that the Clerk of Court administratively close this case, subject to the right of any party to file a motion to reopen based on good cause.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of November, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE